Elizabeth Brancard on behalf of Plaintiff Ricardo Gomez. I also have with me here today the United States appearing as amicus, and we're going to split time. I'm going to give them five minutes of time, so I am going to go down to about six minutes and save one for rebuttal and give them five. If you'll keep track of your own time, we'll try to help you on that, particularly when you split it gets interesting sometimes. This case presents two issues, one substantive, one procedural. The United States is going to talk some on the substantive issues, and I am too, but I just want to quickly procedurally get this clear that we're alleging that the District Court abused its discretion by dismissing our complaint without leave to amend in the first instance, and then in refusing to reopen the judgment to allow us to file a second amended complaint. What additional facts would you have pleaded to? The actual second amended complaint is in the record, and we specified more clearly the reason that ECOA 15 U.S.C. section 1691A.2 does not provide an exemption or provide a legitimate non-discriminatory reason for Quicken's demands for medical information by explicitly pleading that this requirement for medical information on persons using disability income is a different type of demand than is placed on other applicants. What section are you citing again? I'm sorry, you're talking about 15 U.S.C. 1691B.2, is that what you're talking about? Correct, which provides that it's not discrimination under ECOA to inquire whether an applicant's income comes from public assistance, but that does not provide, it does not trump the Fair Housing Act, which provides that it's... Well, they don't trump it, but it's also a statute. They don't even refer to each other, do they? No, no, they don't refer to each other. So if one statute permits a lender, indeed requires a lender to inquire, particularly after the most recent experiences in our economy, to inquire about this, and it's across the board, why wouldn't that statute have some bearing on whether there's been disparate treatment here? Well, several things, Your Honor. First thing is that the actual statute itself, allowing an inquiry into whether someone has public assistance is not the same as requiring proof of medical information to guarantee that income will continue into the future. First of all, let me take you to the statute, and you tell me why it doesn't say that. I mean, I read the statute itself, and I guess I'm trying to figure out, are you saying that based on the statute, it only says one can ask someone if they're on public assistance? That is what the terms of the statute itself say. I realize that's your argument. I guess I'm trying to determine if that's really the way you want us to read it. Are you saying that if we read this statute, one can say what's your age, but that's it, and what are you on public assistance, but that's it? Is that what you're saying? Well, that's what the statute says. Is that what you're arguing? I would say yes, because... Because I'm not sure you're right, but I just want to hear your argument. Well, I say that for several reasons. One is because ECOA is a remedial statute, and this is an exemption from its otherwise broad reach of what constitutes discrimination, and therefore it has to be read narrowly. So I understand the narrow reading. I guess I'm trying to understand what's the reason for the rest of the words there, if I read it the way you do. What does it tell you? If all you can say is what is your age, what are you on public assistance, those are the only questions. What does it tell you? I mean, it seems to me that the purpose of the inquiry per the statute is determining the amount and probable continuance of the income benefits, the credit history, and the element of credit worthiness. So I'm still trying to say what's the use of asking those questions? Are you saying if you've got that as your basis, you can ask these questions which don't tell you anything? No, I don't think so, Your Honor. I think that you may ask that question for these purposes. Well, that's what I said, but what you say, public assistance or 52, doesn't tell you anything. That doesn't tell you anything about what you're trying to learn. And it seems to me it can only be a reading of this statute that as long as you're only trying to get these things, that's all you can get. But the very question, are you on public assistance, doesn't get you that. Okay, but regardless of that, this does not allow an inquiry into disability status. Well, just a minute. Let's look at what you say. I know what your argument's going to be because I've read what you've said. I read your complaint. They asked for you a letter, and the letter was to do what? What is your complaint say the letter was to say? It was to verify current and future disability. So all that needed to be said is this client is on disability and he will continue in the future? No. It was this client is disabled and this client will continue to be permanently disabled into the future. Well, I guess that's what the letter said. What did the loan application ask for? The loan, that was not part of the loan application. What did the letter ask for? The demand by Quicken was that medical information be provided. That isn't what this says. It says his current and future disability status. I'm reading your complaint. I'm only reading what you wrote. I think that there is. It seems to me that what you wrote in your complaint says they have to have proof of current and permanent disability status. I'm trying to figure out what did they ask you? They asked him. They demanded that he provide that. Your Honor, that's not in the complaint what the question was. It is in the second amended complaint. There's nothing more in the second amended. Your Honor? Well, I mean if there is, quote it to me. I want to see it. It's in the second amended complaint. It's clear that it was demanded to prove medical evidence to prove the current and future disability, which was the purpose for which was to guarantee that there would be disability income in the future, whereas with employment income there is no requirement that there be a guarantee in the future. The employee is not required to provide any kind of proof that they will continue with their job even one day after they take the loan out. Okay, I understand your argument. Let me ask you another question. Was the, if you will, Consumer Financial Protection Bureau's final rule in effect at any time during this time? No, Your Honor. So the rule itself was not in effect? That rule was not, but other rules were that Quicken has put into requested judicial notice of, and those were the rules that were required by Fannie Mae and Freddie Mac. Is Fannie Mae or Freddie Mac of any relevance to what we do in this case? I didn't think Fannie Mae or Freddie Mac had anything to do with this loan. Well, that's not in the record that they do. Well, it would seem to me you'd want to say that in your complaint if I were to take those regulations under my review. And those are in the Second Amendment complaint. They're not in the First Amendment complaint. Well, even in the Second Amendment complaint, do you say it was covered by Freddie Mae? No. No, it wasn't. So those regulations are irrelevant. What we have in front of us is the regulations as they exist now, and what the Bureau did, which now makes it pretty clear what can happen or what can't, was not in effect. And so on that record, I am to suggest you've established a claim for discrimination. Yes. My time is up. I need to. Well, I don't think it's up if you want to answer my question. Well, Your Honor, yes, because the Fair Housing Act prohibits imposing additional documentation requirements on persons because of disability. Requiring someone, because they rely on disability income, to provide additional documentation not required of others is discrimination under the Fair Housing Act. All right. I understand your argument. Good morning. May I please quote? This Court should reverse the District Court's dismissal of Mr. Gomez's Fair Housing Act claim. The District Court erred in finding that it was a proper inquiry under the ECOA exception that you, Your Honors, have been discussing. By what authority? The very terms, Your Honor, of 15 U.S.C. 1691b2 say that it shall not constitute discrimination for the purposes of this subchapter. That's referring explicitly to the Equal Credit Opportunity Act. There is no reference to the Fair Housing Act. By way of background, this exception was enacted, ECOA was enacted in 1974. It was amended in 1976 to include some other bases of impermissible discrimination. And that's when this exception was put in full into the statutory text. The Fair Housing Act was amended in 1988 to include discrimination based on disability. At that point in time, this ECOA exception existed in the law, and yet it was not similarly incorporated into the Fair Housing Act. Let me ask you this, Counsel. Let's argue and let's assume you're correct about that. Under our Budnick case and other authorities, the plaintiff in this case has to provide circumstantial evidence or direct evidence showing that a discriminatory reason more likely than not motivated, in this case, Quicken in requesting the proof of future income. In this case, the plaintiff received four loans. He was not denied anything. And three of those loans, they actually solicited him. Is there any evidence in the record that shows, circumstantially or otherwise, that there was discriminatory intent on the part of the defendant? Your Honor, if I may, the mere fact that Mr. Gomez was offered and received additional loans does not defeat his claim. I mean, 42 U.S.C. 3605 clearly states that it's impermissible if, in the terms and conditions of the loan, he's subjected to more onerous requirements. But we have case law that construes what we're talking about here. As a matter of fact, I think I wrote that case. And we need some evidence of, if you will, scienter. I'm struggling to find it. Where is it? Your Honor, I think fairly construed, the First Amendment complaint, if Your Honor turns to paragraphs 8E and 8G, that's in excerpts of record page 206, those are the allegations that we believe state a claim of disparate treatment. Mr. Gomez alleges that Quicken used different qualification criteria, different income standards, different practices and procedures in determining creditworthiness. And that's what distinguishes this case from the Seventh Circuit decision in Wiginton. Here, fairly construed, the allegation is that Mr. Gomez was subjected to more onerous income verification standards because of the source of his income, which was disability dependent, as compared to other applicants in equal standing in terms of income, credit, et cetera, merely because they came from different sources. I mean, Your Honor, here we have someone who was receiving Social Security income for 20 years when he applied for this loan. If you compare that to a 20-year wage earner, there's no indication that Quicken would have asked a 20-year wage earner for a medical documentation. But the structure that you referred to earlier, that you say doesn't apply, let's use some common sense here. If you're a lender, you want to know what the likelihood is that someone's going to be able to continue to make payments. So when an applicant submits paperwork and indicates, you say, what is your income, where does it come from? So you verify it. It's true that if somebody's working, you're going to ask the employer to verify that this gentleman was not working in that same sense. So you wouldn't ask for that. But that's just common sense. You're basically saying we're going to track the source, make certain there's a source of income. Now, if under the case law, if they ask that to discriminate against him based upon a disability, then that's one thing. But based on my understanding of the statute and the case law, you've got to show that the reason for it was to discriminate against him in an illegal way. And in this case, it seems that they've bent over backwards. He was never denied a loan. As I said, there were three different times they contacted him and offered him a loan. But the mere fact that he got a loan, Your Honor, does not defeat his claim. The fact is that he had to submit to more owner's income verification standards than other similarly situated applicants whose income was not disability dependent. But that's why I asked you to look at the complaint, because I was trying to figure out what the owner was. And when I looked at the original complaint, because the district court never let the other complaint in, I couldn't find anything more than certifying disability, in other words, saying permanently disabled and would be disabled in the future. I don't even think he had to say permanent. All they had to say, based on what they asked, was disability and will continue in the future. I'm trying to figure out whether that really gets where you want to go. Because when I look at the complaint, I can't find any more than that. Isn't it medical proof that you're objecting to, that they have to disclose their medical condition? Is that actually required by the policy? I see my time has expired. If I may take an opportunity to address Your Honor's questions. To answer Your Honor, yes, that is precisely the issue. We need to separate out income verification versus proof of medical disability. There's no question that banks need to verify income of all sorts for a certain period of time. Just to go back to Your Honor's discussion with Ms. Brancard, there is no uniform federal guidance. There are different sets of guidance that apply to different loans. I'm sure Your Honors are aware this is a motion to dismiss. The factually record had not yet been developed in terms of what type of loan this was and which federal guidance and which underwriting standards were applicable to that loan. I appreciate that's where you want to go, but I also have to look at the complaint. I have to say what was alleged. If you're going to make better than the allegations in the complaint, then you have to allege them. That's why I'm focusing on the complaint, what was asked for. You can talk about all the regulations, but what was the plaintiff alleging? Would you focus on the complaint? Is there anything in that complaint that goes against what the regulations would say for the reasons suggested? Your Honor, as I noted, I think the best allegations are 8E and 8G. That's in which complaint? In the First Amendment complaint. That's in the First Amendment. So in order to get to the First Amendment, I have to suggest that there's an abuse of discretion. Are you prepared to mention that? No, Your Honor. If I may, the operative complaint in the court below was the First Amendment complaint. Plaintiff sought leave to file a Second Amendment complaint, which does amplify the allegations to a greater extent, which we're not taking a position on the latter issue that you mentioned. But it does allege that Mr. Gomez was subjected to more onerous income verification requirements because of the source of his income, which was disability-dependent, as compared to other applicants. And the United States' view is that that fairly states a claim of disparate treatment under the FHA. Thank you very much. We'll hear from counsel for Cricket. Good morning. May it please the Court. Thomas Heffron for Quicken Loans. Your Honor, the district court correctly found that this complaint did not state a claim for intentional discrimination. The only evidence that the plaintiff pointed to was that my client made an inquiry for a proof of current and future disability and that that was the only direct evidence of discrimination. And the problem, as the district judge recognized, is that Section 1691 of ACOA allows an inquiry into precisely the basis and continuation of an income. Counsel, as you know, both the plaintiff and the government take the position that the code section in this, I think, 1691b2 applies to a different act. What's your position on that? Sure, a couple of observations about that. First of all, it's not sensical to think that Congress has passed a statute saying, an anti-discrimination statute saying it's okay to ask about this question, and then, however, it is illegal and violates another anti-discrimination statute to do precisely the same thing. This case has, as many cases in the housing area, has claims for both Equal Credit Opportunity Act and Fair Housing Act. There's a lot of overlap, as is recognized by all the parties. And so it doesn't make any sense to say that it's okay to ask the question over here, but that it's illegal to ask the question over there. Furthermore, there's an interesting wrinkle here that the parties that we mentioned and the plaintiffs didn't respond to, which is the Equal Credit Opportunity Act, the allegation here is that there's a discrimination based upon disabled people with disability income. There's no allegation that my client discriminates against all disabled people, only people with disability income. So this is a case about disability income, not about disability. And disability income is not covered as a protected class under the Fair Housing Act. So the idea that somehow the Equal Credit Opportunity Act exemption is irrelevant to the Fair Housing Act claim is wrong, in the sense that the Fair Housing Act claim simply isn't even stated on the face of this complaint. It's just the income that they receive, not the disability. Correct, correct. But you do ask for medical proof, don't you? That's part of the policy. The allegation was that, and as Judge Smith indicated, was that my client asked Mr. Goma as a proof of current and future disability. Well, I think that's not quite correct. The proof of his medical proof of his current and future disability is the allegation. Medical proof of his current and future disability, that's correct. That's the allegation with respect to at least two of the loans. So if you need medical proof, that means you need a statement from the treating physician as to the person's condition. Isn't that what we should understand that to mean? As to what the allegation is, that's correct. Medical proof, perhaps not a physician, perhaps some other health care provider, presumably. Proof consistent with the Equal Credit Opportunity Act as to whether there is a receipt of income for purposes of considering the amount and probable continuation of that income. Isn't that the key from at least your perspective, that you ask for this for the purpose of determining the likelihood of the continuation of income? That's correct. You're not a medical voyeur. You're not trying to find out what the issue is or what kind of problems there are. You want to know whether there's a continuation. Correct. And similar to a good parallel example would be alimony, when someone relies on alimony. The question is, gee, is there actually a divorce and is there a court order showing that there's alimony payments? It's not for purposes of figuring out whether this person has problems in his or her former marriage. It's to figure out whether the income is likely to continue. So it isn't satisfactory to quicken that the United States Social Security Administration has decided this person is totally disabled, which is a pretty high threshold to reach. Why do you need to know more? Well, this gets somewhat into what the standards were. The standards in the industry, as we indicated, were actually that you did need to show continuation. Similar to, for example, alimony, the fact that the person is divorced is not good enough. You actually need a court order. Other types say that you need more. Now, current standards are that you don't need more. All you need is the award letter. But the question here is, did my client discriminate because of the disability or receipt of disability income? The only evidence was the allegation that they asked the question. And as Judge Klausner indicated and found, that fact, that's the only one fact, that fact was wiped away for purposes of stating the claim by the regulation, or the statute and regulation, which permits you to ask about information concerning continuation. Well, I think my colleague has, to some extent, asked the question I was going to ask you. To the fact that it is medical proof, does that cross the line? We would say, again, and that's, of course, only the allegation. We would say no, because when you're talking about It does. I mean, that's the worry that I have. In all other types of things, one can ask for proof of current and permanent ability to pay. One can ask about a lot of things about what is necessary to pay, what it can be. But attaching the word medical, does that make it more than it should based on the statute? No, and there's no distinction drawn in ACOA suggesting that. In this instance, the type of income has connected with it, the question of continuation has connected with it, a medical factor, much like the alimony example I used has connected with it, a judicial or a personal relationship factor. I gather, for example, in the Social Security example, it's well known that you can have Social Security disability for a short period of time before there's a permanent award, and presumably that would be important to a lender. As well as the fact that Social Security disability income is based upon a finding that you're going to be disabled for at least 12 months. It's not that you're going to be disabled for the rest of your life. That's the temporary, I was referring to. Correct, and obviously many people do remain disabled for the rest of their life. The reason I was questioning your opposition counsel, and I'm really focusing in on you, is I saw what was provided, or what they allege was provided, the letter, and what was stated in the letter, and it seems to me that the next allegation is that they wanted an update. Would you agree with that? First the letter was provided in March of 2010, and then in August of 2012, the fourth loan, they asked for an update. That's correct. So for the first three loans, the same letter was used, and thereafter they just wanted an update, with no more information as, I mean, I'm reading the complaint, I don't know, than what was given in the letter before. Correct, and they don't allege much at all about what was in the letter, but they clearly allege that there was a letter, that first letter was relied upon for the next two loans, and then the update was the fourth of the four loans. Would that be common? Again, this is a different statute, of course, but if you had someone that had no income that was coming from disability, would you inquire about status of employment in connection with each loan? Sure, absolutely. That's standard process. Sure, and the lending standards, which are before the court and which are off-pointed to this issue, do point out obviously there's lots of different kinds of income. You have trust income, you have alimony, you have temporary seasonal income, you have permanent income, you have all sorts of different ways in which you can have enough money to pay the loan, and it's natural for a lender to want to make sure that not only can they pay it today, but they can pay it next month and next year. Counsel, can I switch your focus for a minute to what I'm calling scienter? It really isn't a criminal term, but in the sense of ill intent or improper intent under the statute. What level of intent to discriminate is required under the statute, and what type of proof is required? At this stage, the plaintiff must show, as Your Honor correctly cited from, I think it was Budnick, that it is more likely that there's a plausible claim, because it's a motion to dismiss, that it is more likely than not that the decision was because of Mr. Gomez's disability or disability income. And so they need to show that it is more than just consistent with or even in spite of the disability or disability. They have to show some plausible claim that it is because of the disability or disability income. And here, the only fact they identified was that the question was made. The statute should wipe that away. The other facts clearly demonstrate that Quicken Loan's actions were not because of disability income. They called him three separate times to offer a loan knowing he was disabled or may well suggest applying based upon a disability. Gomez himself alleged in his first complaint that the inquiry was for the purpose of establishing future income. And that's alleged six different times in the first complaint. The problem is that there are many people who are not going to, many applicants for these loans are not going to have income for three years out. Some of them are going to die of a heart attack the day after the loan was granted. So why do you put this burden only on this group of disabled people, people who have really the best showing that they're going to be supported for three years out because they've gotten their Social Security grant award. Whereas you don't ask anything like this of other people. Okay, Judge, a couple of responses to that. First, there is no allegation in the First Amendment complaint, which is the operative complaint about what it is my client does with respect to others. The assertions that were pointed to in paragraph eight are conclusory. They don't allege that at all. In fact, they had alleged it in their first complaint and they took it out. They made a decision. They don't want to bring this case based upon what people did vis-à-vis Mr. Gomez. They realized they wanted to only look at Mr. Gomez. So I think it's not a fair inquiry, given that they made the decision to take those allegations out, for them to drag them back in in connection with this argument. I would also point out, Your Honor, that it is true, certainly, somebody who has a job can lose their job tomorrow or drop dead of a heart attack. It's also true that somebody who is on disability income can drop dead of a heart attack. And they also can get better. We hope, of course, they do. But obviously, oftentimes, they do not. Three years is a relatively long time, on the other hand, and doctors making a prediction about what's going to happen three years from now may be wrong. The question, what my client did, okay, was obviously to try to improve the information in order to make a reasonable decision, because it's making a decision about risk to try to make sure the loan is going to be repaid. The allegation is that that's not, that that's too intrusive, and perhaps under current lending standards it is, okay, but we're talking about a time when, as we pointed out, in terms of industry standards, it wasn't perceived to be too intrusive. And so the question is, was it a discrimination because of disability or disability income? And the answer to that question is no. There's no evidence to support a conclusion. It's more likely than not. The counsel, and with some, I think with some reason, said if I look at 1691A, it says what there is, activities constituting discrimination, and it's certainly discrimination if you refuse because of anybody's own public assistance. Then it goes to B, and it says what it does not constitute discrimination. And B2 says, and I read, to make an inquiry of the applicant's age or of whether the income derives from any public assistance program. Then it says if such inquiry is for the purpose of, and this is where you seem to go, is, I mean, am I reading that statute too broadly to say that the best you can say is that they derive their income from a public assistance program? That's, Mr. Gomez's position is that essentially you can ask a yes-no question, and that's it. Right. But it seems to me that that is covered under A, where it says what is discrimination if you discriminate because of that. So I'm trying to say, reading this language as it is, is it, I mean, she makes a pretty good argument. That's the best you can argue, because everything thereafter is only for the purpose of. The assertion, Mr. Gomez's assertion that the use of the word whether means all you can ask is the yes-no question, as we indicated, we believe is too narrow because the purpose of that, as indicated here, is to determine the amount and probable continuance of the income. And it's natural that in asking about that, you need to ask questions about the probable continuance. I would also point out that it says, as provided in regulations by the Bureau, and the regulation we pointed the court to, says that a creditor may consider the amount and probable continuance of any income. So under the regulations, you can ask about continuance for any income. That, of course, includes disability income. This is squarely on point with the Wiginton case from the Seventh Circuit. There's no distinction, and we pointed out in our 28J letter why. The 28J letter, which was submitted to the court, I think it was in the middle of June, points this court to the Wiginton decision, and if this court did reach a different ruling, we would suggest that that would create a circuit split. There is the allegations in the complaint in Wiginton, again, just like this case, focused only on the named plaintiff, didn't talk about what other people had done. And the court said it's okay to ask those questions, cited ECOA, the lower court did, and that that's therefore not evidence, not a plausible claim that the decision was more likely than not motivated impermissibly. I know your time has just gone, but we can ask questions anyway. What, if anything, are we to draw from the fact that the government has promulgated a clarifying regulation that now limits the type of inquiry that you allege was previously permitted? A couple things. I would suggest, first of all, that's exactly what they did, which is they attempted to change the rules, which means it's quite remarkable to suggest that my clients committed discrimination by doing what, for example, the Federal Housing Administration said you had to do at the exact same time. Obviously, standards change over time. We've had a lot of changes in the industry, a lot of changes as a result of the financial crisis. My client shouldn't be judged by today's standards for what it did yesterday or back in 2010. And whether or not those standards are required or not required by the statute is a different issue, okay? I would suggest that if my client did today ask those kinds of questions, it's still an open issue, not on this case, still an open issue about whether it violates the statute. But the flip is also, however, true, which is it doesn't make any sense that the old rules from the federal government that says you can do it, somehow when we acted consistent with that, we violated the law, even though the federal government told you that's what you were supposed to do. Okay. Other questions from my colleagues? May I? Please. There are actually two aspects of this. One is it's, in a way, you're asking them to plead around an affirmative defense, which is not normally so. I make that more as a comment. But what about this? You have a neutral rule that we can inquire, quicken may inquire into the creditworthiness of any applicant for a loan. Only those known to be disabled, however, are required to give medical information. Isn't that stating a claim of disparate impact, which may be hanging by a thread? It may be hanging by a thread in the sense of the Supreme Court. Yes. Yes. It may be hanging by a thread, Your Honors. Assuming that case survives the Supreme Court decision in a week or two. The answer I'd say is no, because the neutral policy of quicken loans, deciding that everybody needs to submit information about creditworthiness and continuation of income, that's not the theory in which they're going forward. I mean, they don't say the neutral policy, which is at issue in this case, is the policy of asking people for information about continuation. They say the policy is asking disabled people who have disability income to ask them questions about their disability income. That's not a neutral policy. About their medical condition. About their medical condition, which is the predicate. It is the predicate to disability income. If they're already on disability income, it is the predicate to continuation of that income. So, I mean, I do understand, obviously we all do, understand the sensitivity of medical information. On the other hand, since it's the predicate to receiving that income, it's difficult to see, in most instances, how you can ask about continuation without having at least some fair appreciation of that. Thank you. Other questions? Thank you, Your Honors. Thanks to all counsel. We appreciate it. It's been very helpful. You all used up all your time and then some, but we appreciate it very much. The case just argued is submitted.
judges: Lefkow, Smith, Smith